### CATHERINE GAVIN *vs.* COMMONWEALTH.

Worcester.    September 29, 1902. — October 30, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Metropolitan Water Supply Act.    Words,* "Business."

A widow whose eight children working in a mill live with her paying board and whose two nieces and their aunt occasionally board with her during their summer vacations is not an individual "owning an established business" within the meaning of St. 1895, c. 488, § 14.

PETITION, filed July 9, 1901, under St. 1895, c. 488, § 14, alleging that the petitioner on April 1, 1895, was the owner of an established business, to wit, the keeping of a boarding and lodging house, on land in the town of West Boylston, that the land on which the business was carried on was taken under the act and that by the carrying out of the act the petitioner's business was damaged and destroyed.

The case came on to be heard before *Knowlton,* J. upon the report of commissioners theretofore appointed to hear and report upon it. After hearing, the justice, by agreement of the parties, reserved the case for the consideration of the full court, upon the question, whether upon the facts set forth in the commissioners' report it was competent for them to find that the petitioner had an established business within the meaning of St. 1895, c. 488, § 14.

*W. A. Morse, J. F. O'Connell & J. R. Chandler,* for the petitioner.

*R. A. Stewart & F. B. Greenhalge,* Assistant Attorneys General, for the Commonwealth.

BARKER, J.  We are all of opinion that upon the facts found by the commissioners it was not competent for them to find that the petitioner was " an individual . . . owning on the first day of April in the year eighteen hundred and ninety-five an established business on land in the town of West Boylston."

The petitioner was then a widow whose husband had been dead about seven years, with eight children, the eldest of whom was thirty-five and the youngest seventeen years of age.  All of these children worked in the mills in West Boylston and lived with the petitioner at home and each child paid to her board. Before her husband's death her brother boarded in the family for two years and paid board, and since her husband's death two of her nieces and their aunt, residents of New York have occasionally spent their summer vacations of a few weeks at the petitioner's house paying board for the time they stayed.  These were all her boarders up to April 1, 1895, but three or four years after that date she boarded for about two months a man who was working in West Boylston laying telephone or telegraph wires.  Her boarders were limited practically to her own family and she made no effort to get others.  She was without property and her children were without other means of support than their own labor.  She hired and kept the house, paid the expenses of running it from the money received from board and saved each year a small amount as profits.

No doubt the word " business " might in some sense be applied to the petitioner's occupation.  But the keeping of a home for herself and her children at which she occasionally entertained for pay relatives of the family, while she neither had nor made any effort to get boarders other than those who were members of the family had none of the elements of an established business of which ownership in the sense in which that word is used in the statute can be predicated.  Her domestic servants, if she employed such had in a certain sense a business but no one would say that such a servant was an owner of an established business in the sense of the statute.  The subsequent enactment

of St. 1896, c. 450, giving a right to damages to residents of the town who were employees and were thrown out of employment by the taking of property for the metropolitan reservoir shows that the Legislature did not mean to include as owners of an established business individuals who gained their livelihood by the ordinary employments for which they were paid by others. At most the business of the petitioner was the keeping up of a home for her children and herself, resulting not from any plan or effort or intention to establish the business of keeping a boarding house, but from the nature of the relationship between herself and her children and the circumstances of the family. The inmates of her home could not be called her customers. Although they paid her board they lived with her as her children and because all were members of the same family. The result is that the commissioners could not find that the petitioner had an established business within the meaning of St. 1895, c. 488, § 14.

*Petition dismissed.*